IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
*Newport News Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Criminal Nos. 4:22-CR-20 |
| | ) | |
| **DEON HARRIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**POSITION OF UNITED STATES
WITH RESPECT TO SENTENCING FACTORS**

In accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2, the United States of America, through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and Jared Engelking, Special Assistant United States Attorney, hereby represents that it has reviewed the Probation Office's revised Pre-sentence Investigation Report (hereinafter "PSR"), ECF 249, and that it does not dispute any of the facts set forth therein.

The defendant, DEON HARRIS (hereinafter "the defendant") pled guilty to Counts One and Four of the superseding indictment. Count One charges the defendant with Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii)(II). The maximum penalties for this offense are a mandatory minimum term of imprisonment of 10 years, a maximum term of life imprisonment, a fine of $10,000,000, a special assessment pursuant to 18 U.S.C. § 3013, and a supervised release term of at least 5 years. Count Four charges the defendant with Possession of a Firearm During a Drug Trafficking Crime, to wit: a short-barrel rifle, in violation of 18 U.S.C. § 924(c). The maximum penalties for this offense are a mandatory minimum term of imprisonment of 10 years, a maximum term of life imprisonment, a fine of $10,000,000, a special assessment pursuant to

1

18 U.S.C. § 3013, and a supervised release term of at least 5 years. The sentence in Count Four shall be consecutive to any other sentence imposed in the instant case.

The defendant's adjusted offense level is 34. Because of defendant's acceptance of responsibility, his total offense level is 31 under U.S.S.G. §§ 2K2.1(6) and 3E1.1(b). The defendant is in Criminal History Category I; therefore, his Guidelines range is 108 to 135 months of incarceration. However, the defendant plead guilty to Count One, an offense which carries a statutory mandatory minimum sentence of 120 months incarceration. Therefore, his restricted Guidelines range is 120 to 135 months on Count One, plus a consecutive 120 months on Count Four.

Based upon the facts of the defendant's case, including all relevant conduct, the defendant's criminal history and characteristics as set forth in the PSR, and taking into the consideration the factors of 18 U.S.C. § 3553(a), the United States believes that a sentence of 246 months is sufficient, but not greater than necessary, to comply with the purposes of sentencing enumerated in 18 U.S.C. § 3553 *et seq*.

## PROCEDURAL HISTORY

The defendant and his co-conspirators were indicted in a twenty-four-count superseding indictment on August 9, 2022. The defendant was charged in thirteen counts. Count One charged the defendant with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, Heroin, Fentanyl, and Marijuana, in violation of 21 U.S.C. § 846, from in or about February 2016 up to and including the date of the indictment. Count two charged the defendant with Possession with Intent to Distribute One Kilogram or More of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i), on or about April 1, 2022. Count Three charged the defendant with Possession with Intent to Distribute 400 Grams or More of Fentanyl, in violation of 21 U.S.C. §§

841(a)(1) and (b)(1)(A)(vi), on or about April 1, 2022. Count Four charged the defendant with Possession of a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c), on or about April 1, 2022. Count Five charged the defendant with Possession with Intent to Distribute Five Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), on or about September 28, 2021. Count Nine charged the defendant with Maintaining a Drug Involved Premises, in violation of 21 U.S.C. § 856(a)(2), from on or about August 17, 2021, until September 28, 2021. Count Seventeen and Counts Nineteen through Twenty-Four charged the defendant with Use of a Communications Facility in Furtherance of Drug Trafficking, in violation of 21 U.S.C. § 843(b), from on or about February 28, 2021, until September 28, 2021.

On January 5, 2023, in accordance with the terms of a written Plea Agreement, the defendant appeared before the Honorable Lawrence R. Leonard and pled guilty to Counts One and Four of the 24-count superseding indictment.

## DISCUSSION

Prior to sentencing the defendant, the Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 555 U.S. 350, 351 (2009). Taking into consideration the defendant's guidelines range and the factors set forth in 18 U.S.C. § 3553(a), a 246-month sentence (126 months on Count One and 120 months on Count Four) is sufficient but not greater than necessary to comply with the purposes of sentencing.

I. <u>The nature and circumstances of the offense</u>

Title 18, Section 3553(a)(1) of the United States Code provides that, in determining a sentence, courts must consider the nature and circumstances of the offense. The nature and circumstances of the instant offense is extremely serious and weighs heavily against the defendant. In sum, the defendant was caught buying roughly $160,000 or 7 kilograms of cocaine, and was caught with an arsenal of firearms, ammunition, and body armor, including a short-barrel rifle he possessed during and in furtherance of his drug trafficking crimes.

In 2021, law enforcement began investigating the drug activity of the defendant, who stored and distributed drugs out of his small business, or "shop," located at the 4600 block of Jefferson Avenue, Newport News, Virginia. PSR ¶ 12.1. The defendant received narcotics from his co-defendants, the Espinoza brothers, Jonathan Espinoza ("JO ESPINOZA") and Jiovanni Espinoza ("JI ESPINOZA"). *Id*. The Espinoza brothers lived in California and would regularly fly from California to the Eastern District of Virginia to facilitate the delivery of large amounts of narcotics to the defendant, and then collect the narcotics proceeds. *Id*.

The defendant arranged a drug deal with the Espinoza brothers in September 2021. PSR ¶ 12.2. JO ESPINOZA informed the defendant that JI ESPINOZA would be flying from California to Virginia to facilitate the deal. *Id*. The defendant discussed the quantity and cost of controlled substances with JO ESPINOZA, who informed the defendant, "It's gonna be seven"—in other words, seven kilograms of cocaine. PSR ¶ 12.3.

JI ESPINOZA flew into Norfolk International Airport on Delta Airlines, arriving at 12:12 a.m. on September 28, 2021. PSR ¶ 12.5. He rented a vehicle from Avis and checked in to a room at the Renaissance Portsmouth-Norfolk Waterfront Hotel in Portsmouth, Virginia. *Id*. That morning, the JI ESPINOZA sent the defendant a text message saying, "What up man, im in town

can i stop by and see u tomorrow." PSR ¶ 12.4. Over the next several hours, JI ESPINOZA and the defendant coordinated the logistics of their drug transaction as to when and where the meeting would take place before ultimately agreeing to meet at the defendant's "shop." *Id*.

At approximately 9:59 a.m., JI ESPINOZA arrived at the defendant's "shop" located at 4600 Jefferson Avenue, Newport News, Virginia. PSR ¶ 12.6. The defendant arrived a few minutes later, and JI ESPINOZA and the defendant both entered the shop together. *Id*. At approximately 11:59 a.m., the JI ESPINOZA left the shop carrying a black backpack and drove to a Waffle House in Hampton, Virginia. PSR ¶¶ 12.6, 12.7. There, JI ESPINOZA met with co-defendant Edgar Ponce Magana ("PONCE MAGANA"). PSR ¶ 12.7. PONCE MAGANA took a cardboard box out of a vehicle and placed it into the trunk of the JI ESPINOZA's vehicle. *Id*. PONCE MAGANA then got into the passenger seat of JI ESPINOZA's vehicle, and JI ESPINOZA dropped him off near the Renaissance Portsmouth-Norfolk Waterfront Hotel. *Id*.

Law enforcement then conducted a traffic stop on the JI ESPINOZA's vehicle. PSR ¶ 12.8. Law enforcement searched the vehicle and discovered 7 kilograms of cocaine in the cardboard box that PONCE MAGANA placed in the vehicle. *Id*. Law enforcement also apprehended PONCE MAGANA near the hotel, who was carrying the black backpack that JI ESPINOZA had previously carried out of the defendant's "shop." *Id*. The backpack contained approximately $159,775. *Id*. The image below shows the defendant's money and cocaine that was seized by law enforcement.



After the defendant's arrest, on April 1, 2022, law enforcement executed a search warrant at his "shop." PSR ¶ 12.9. Law enforcement seized the following: approximately 1.25 kilograms of heroin; 673 grams of fentanyl; 32 firearms, including shotguns and rifles; a suppressor/barrel extender; thousands of rounds of ammunition; multiple magazines, 5 ballistic vests; and United States currency, among other items. The image below shows merely a few of the items recovered from the defendant's "shop."



One of the firearms seized was a short-barrel rifle with a total length of 25 inches and a barrel length of 10 inches, which falls into the statutory requirement of a short-barrel rifle. PSR ¶

6

12.10. The defendant admitted he possessed the firearm during and in relation to his drug trafficking crimes. *Id*.

II. The history and characteristics of the defendant

The defendant's history and characteristics further support a sentence of 246 months incarceration. The defendant is 54 years old and has several adult criminal convictions. *See* PSR ¶ 44-50. The defendant was a convicted felon by age 20. Merely 4 years later, he was convicted in this Court of being a Felon in Possession of a Firearm and was sentenced to 70 months in federal prison. This sentence, however, clearly did not deter the defendant from continuing to illegally possess firearms and ammunition as he amassed his arsenal.

Despite being in Criminal History Category I and having his last conviction in 2011, the nature and circumstances of the instant offenses belie the notion that the defendant has otherwise lived a law-abiding life. There is abundant evidence to suggest the defendant was a significant drug dealer in the Hampton Roads area of Virginia. First, the defendant was caught conducting a roughly $160,000, 7-kilogram cocaine deal. Second, the defendant admitted to buying additional, large quantities of cocaine. The defendant admitted when he was arrested that his co-defendants previously sold him 3 kilograms of cocaine in August 2021. PSR ¶ 15. He also told law enforcement that he met a truck driver 2 to 3 times and would get 2 to 3 kilograms of cocaine each time from the truck driver. *Id*. In total, the defendant is attributed with a staggering amount of drugs: roughly 14 kilograms of cocaine, 1,248 grams of heroin, 677 grams of fentanyl, and 907 grams of marijuana.

The defendant's crimes are even more egregious given his education and lack of any substance abuse issues. The defendant denied ever using illegal substances or attending any substance abuse treatment program (other than Narcotics Anonymous/Alcoholics Anonymous in

7

Western Tidewater Regional Jail). PSR ¶ 73. The defendant also graduated from high school and claims to hold a bachelor's degree in Hospitality Management and Advanced Culinary from Stratford University in Newport News, Virginia. PSR ¶¶ 74-75. The defendant was previously employed as a truck driver for CDL, PSR ¶ 78, and he started his own company, Lucky Eight, LLC. PSR ¶¶ 77. However, instead of using his education and business acumen for legitimate purposes, the defendant chose to use his business as a front for his illegal activities by conducting his September 28, 2021 drug transaction there, and using it to store his cache of weapons and drugs.

III. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

A 246-month sentence would adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. The quantities of controlled substances that the defendant is attributed with far exceeds the quantities necessary to trigger the mandatory minimum 120-month sentence.

In addition to the sheer quantity of drugs, the seriousness of the offense is further underscored by the types of drugs the defendant was dealing. Cocaine is a dangerous drug that destroys communities and claims the lives of thousands of people every year. *See* National Institute of Health: National Institute on Drug Abuse, *Trends and Statistics: Drug Overdose Death Rates*, February 9, 2023, https://nida.nih.gov/research-topics/trends-statistics/overdose-death-rates ("The number of deaths involving cocaine has also increased steadily since 2015 with 24,486 deaths reported in 2021."). Likewise, in 2021, over 9,000 people died from overdosing on heroin, and nearly 75% of those deaths also involved synthetic opioids other than methadone— i.e. primarily fentanyl. *Id*. According to the Centers for Disease Control and Prevention ("CDC"), synthetic opioids, like fentanyl, are the primary driver of overdose deaths in the United

States. *See* United States Drug Enforcement Administration, *Facts About Fentanyl*, https://www.dea.gov/resources/ facts-about-fentanyl (last visited June 21, 2023). There were over 100,000 drug-involved overdose deaths reported in the United States in 2021, and synthetic opioids, primarily fentanyl, were the main driver of those drug overdose deaths, with a nearly 7.5-fold increase from 2015 to 2021. *Id*. The DEA maintains that 2 milligrams of fentanyl can be lethal depending on a person's body size, tolerance, and past usage. *Id*. Consequently, the 677 grams of fentanyl attributed to the defendant in the instant case could have been enough to kill over 330,000 people.[1]

The defendant's possession of an arsenal of weapons at his "shop" makes his crimes even more serious. The defendant possessed 32 firearms, at least one of which was possessed during and in furtherance of his drug trafficking crimes; a suppressor; thousands of rounds of ammunition; multiple magazines; and 5 ballistic vests. In short, many of the firearms and accessories found at the defendant's "business" are more aptly described as weapons of war than anything that could possibly be used for legitimate purposes. Congress has imposed additional requirements on short-barreled rifles because they are more easily concealable than long-barreled rifles, but have more destructive power than traditional handguns. *See* United States Department of Justice, *Justice Department Announces New Rule to Address Stabilizing Braces, Accessories Used to Convert Pistols into Short-Barreled Rifles*, Press Release Number: 23-4, January 13, 2023. Weapons such as short-barreled rifles are even more of a threat to public safety when they are possessed to further drug trafficking activities. And the defendant, a convicted felon prohibited from possessing any firearms or ammunition, admitted to possessing his short-barrel rifle in furtherance of his drug trafficking activities.

---

[1] 677 grams = 677,000 milligrams. 677,000 milligrams / 2 milligrams = 338,500.

The defendant also possessed a suppressor and several ballistic vests. Suppressor's attach to the barrel of a firearm reduce the noise of a gunshot so that a person using a firearm might go undetected. Ballistic vests are routinely used by drug dealers and other criminals to reduce the chances they would be killed in a shootout with law enforcement or other criminals. There is no legitimate reason for a private citizen to need a suppressor or ballistic vests.

IV. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant</u>

A 246-month sentence would afford adequate deterrence and protect the public from further crimes of the defendant. The defendant needs to be deterred from committing similar crimes in the future.

This was not the first time the defendant has bought large amounts of drugs. The defendant admitted when he was arrested that his co-defendants previously sold him 3 kilograms of cocaine in August 2021. PSR ¶ 15. He also told law enforcement that he met a truck driver 2 to 3 times and would get 2 to 3 kilograms of cocaine each time from the truck driver. *Id*.

It is also not the first time the defendant has been caught with guns and drugs. At age 20, the defendant was charged with possession of a firearm with cocaine, but those charges were either nolle prosed or he was found not guilty. PSR ¶ 46. About a year later, the defendant was caught with several firearms and baggies of cocaine residue. PSR ¶ 47. When the defendant was questioned, he admitted the guns and drugs were his. *Id*. The defendant was sentenced to 5 years of incarceration with 3 years suspended. *Id*. After he was released from incarceration, and despite being a convicted felon, the defendant was again caught with a firearm. The defendant was convicted of being a Felon in Possession of a Firearm and was sentenced by this Court to 70 months incarceration. While these offenses occurred when the defendant was in his twenties, they cannot be blamed on youth or immaturity. As evidenced by the instant conviction, roughly

10

30 years later, the defendant chose to continue possessing guns and dealing drugs. And he chose to do so on a much larger scale. Now, the defendant appears again before this Court, convicted yet again of possessing both guns and drugs. It is evident the defendant does not respect the law; consequently, the need for deterrence is clear.

The United States submits that a consideration of the Section 3553(a) factors warrants a sentence of 246 months' incarceration, which reflects the seriousness of the offense, results in appropriate deterrence, provides just punishment, protects the public, and promotes respect for the law.

<u>Conclusion</u>

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 246 months incarceration (126 months on Count One, and 120 months consecutive on Count Four). The United States also requests a supervised release term of 5 years which would allow sufficient time for the defendant to reintegrate into society. This sentence properly reflects the factors referenced in 18 U.S.C. § 3553(a).

                                                      Respectfully submitted,

                                                      Jessica D. Aber
                                                      United States Attorney

By:       /s/_____
           Jared Engelking
           Special Assistant United States Attorney
           Attorney for the United States of America
           United States Attorney's Office for the
           Eastern District of Virginia
           Fountain Plaza Three, Suite 300
           721 Lakefront Commons
           Newport News, Virginia 23606

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification of such filing to the following:

Tyrone C. Johnson, Esq.

_____/s/_____
Jared Engelking
Special Assistant United States Attorney
Attorney for the United States of America
United States Attorney's Office for the
Eastern District of Virginia
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606